## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ANDRA COLSON,

       Plaintiff,

vs.                                                   CASE NO. 3:11-cv-285-J-TEM

MICHAEL J. ASTRUE
Commissioner of Social Security,

       Defendant.
_____

## ORDER AND OPINION

       This case is before the Court on Plaintiff's complaint (Doc. #1). Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments.  This Court has authority to conduct the requested review.  42 U.S.C. § 405(g).

       Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #22, Plaintiff's Brief).  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #23, Defendant's Brief).  The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated August 30, 2011 (Doc. #20).

       Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in making its determinations.  Accordingly, the matter has been decided on the written record.  For the

reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

In the instant action, Plaintiff protectively filed for DIB on October 31, 2007[1] (Tr. 55, 142).  Plaintiff also filed a Title XVI application for SSI on December 27, 2007 (Tr. 120-126).  In both applications, Plaintiff alleged an onset date of disability beginning April 1, 2006 (Tr. 116, 120, 142).  In the Disability Report- Adult completed on November 20, 2007, Plaintiff alleged he was unable to work due to his anxiety disorder and right knee replacement (Tr. 147).

Plaintiff's claims were denied initially and on reconsideration (Tr. 63-73).  A hearing was held on November 17, 2009 before Administrative Law Judge (ALJ) Robert Droker (Tr. 25-54).   Plaintiff was represented at the administrative hearing by a non-attorney representative, Ms. Susan Butler (Tr. 9, 25, 27).   Plaintiff testified at the administrative hearing, as did vocational expert (VE) Melissa Brooks.  *Id.*   Subsequently, on January 4, 2010, the ALJ issued an unfavorable decision  (Tr. 9-20).  The Appeals Council denied review of the ALJ's decision (Tr. 2-4).  Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff's current counsel of record, Mr. L. Jack Gibney, Esq., filed the instant action in federal court on March 24, 2011 (Doc. #1).  The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

---

[1] It is unknown why Plaintiff's DIB application, dated December 27, 2007, states Plaintiff protectively filed for DIB on November 20, 2007 (Tr. 120).  The Disability Report, the Disability Determination and Transmittal form, and the ALJ state a protective filing date of October 31, 2007 (Tr. 9, 55, 142).

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION
## AND THE STANDARD OF REVIEW

A plaintiff may be entitled to disability benefits when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1505.[2]  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.[3]  *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden temporarily shifts to the Commissioner to establish the existence of other jobs in the economy that the plaintiff can perform.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

The ALJ's decision dated January 4, 2010 denied Plaintiff's claim (Tr. 6-20).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 1, 2006 (Tr. 11).  The ALJ also found Plaintiff's date last insured for DIB to be March 31, 2008.  *Id.*  At step two, the ALJ found Plaintiff had the severe impairments of "a disorder of the knees, a personality disorder, and an affective disorder."  *Id.*  At step

---

[2] All references to 20 C.F.R. shall be to the 2012 edition, unless otherwise noted.  As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

[3] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n.1 (11th Cir. 1986).

3

three, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with some restrictions (Tr. 15).   ALJ Droker specifically found Plaintiff "requires a sit-stand option during an eight-hour workday and must avoid ladders or unprotected heights and operation of heavy machinery."  *Id.*  The ALJ also determined Plaintiff can "only occasionally bend, crouch, kneel, stoop, squat or crawl, and he must avoid the operation of foot controls" (Tr. 15-16).  Moreover, the ALJ determined Plaintiff "needs a low stress work environment with limited contact with the public" (Tr. 15).  At step four, the ALJ found Plaintiff was unable to perform his past relevant work (Tr. 18).

At step five, taking into consideration Plaintiff's RFC, age, education, and work experience, the ALJ concluded Plaintiff was not prevented by his impairments from performing jobs that exist within the national economy (Tr. 18).  Accordingly, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 19).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance-- in other words, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable, as well as unfavorable, to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704, 404.1512(a).

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's

5

decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## ANALYSIS

The record reflects Plaintiff was born January 3, 1970 and was thirty-nine (39) years old at the time of the administrative hearing (Tr. 29, 116, 120).  Plaintiff has a high school education and some college training (Tr. 29-30, 152).[4]  Plaintiff is able to speak and understand English (Tr. 146).  Plaintiff's past relevant work includes construction worker, cook helper, yard worker, and commercial or institutional cleaner  (Tr. 49).

Plaintiff raises two issues on appeal.  First, Plaintiff claims the ALJ erred by not formulating a complete hypothetical for the vocational expert.  Plaintiff's Brief at  4.  Second, Plaintiff claims the ALJ erred by not appropriately assessing all of Plaintiff's mental health impairments, specifically an anxiety disorder.  *Id.* at 8.  The Court disagrees.

The Commissioner responds that the ALJ's decision was based on substantial evidence and should be affirmed.  Defendant's Brief at 4.  The Commissioner first argues that there is substantial evidence to support the ALJ's findings regarding Plaintiff's anxiety disorder.  *Id.*  Second, the Commissioner argues that the hypothetical posed to the VE was not incomplete and complied with the requirements.  *Id* at 7.

Upon review of the record and the ALJ's decision, the Court finds the ALJ did not err as stated by Plaintiff.  The Court's analysis of Plaintiff's issues follows.

---

[4] When asked about education beyond high school, Plaintiff testified "I had a little bit of training in something like workshops and stuff like that." (Tr. 29).  The Disability Report-Adult reflects Plaintiff completed two (2) years of college (Tr. 152).

**Assessment of Plaintiff's Mental Impairments**

Plaintiff argues the ALJ improperly evaluated Plaintiff's RFC.  In this regard, Plaintiff asserts the ALJ erred by not appropriately assessing all of the Plaintiff's mental health impairments, specifically his alleged anxiety disorder.  Plaintiff's Brief at 8.  To address Plaintiff's claimed issue of error, the Court must first ascertain if substantial evidence supports the ALJ's determination of Plaintiff's RFC.

The RFC is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite the claimant's impairments.  20 C.F.R. § 404.1545. The Eleventh Circuit has noted that the focus of an RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments.  *Id.*

As noted earlier, the ALJ found Plaintiff had two severe mental impairments.  To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique (PRT), that is set out at 20 C.F.R. § 404.1520a.  In accordance with those requirements, the ALJ found Plaintiff's severe mental impairments caused mild restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 15).  *See* 20 C.F.R. § 404.1520a(c)(4). To support this finding, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p" (Tr. 16).  Significantly, the ALJ explicitly stated that

7

the RFC reflected "the degree of limitation the undersigned has found in the paragraph B mental function analysis" (Tr. 15) (internal quotations omitted).

In determining Plaintiff's RFC, the ALJ accepted the opinion evidence from Plaintiff's treating psychiatrist, Dr. M. Saleh, M.D., B.C.F.M. (*see* Tr. 17).   The ALJ found most notable that Dr. Saleh reported he doubted Plaintiff wanted to work and described Plaintiff as a manipulative individual who was "trying to use medical certification in order to be placed on disability benefits and receive disability checks every month" (Tr. 346; see also Tr. 17).[5]   The ALJ found Dr. Saleh's report that Plaintiff needs to work in a low stress environment credible and consistent with substantial evidence in the record (*see* Tr. 17, 344).   Furthermore, Dr. Saleh reported, "In regards to [Plaintiff's] anxiety disorder, the chart indicates that we have been treating him with BuSpar [as he] has a diagnosis of unspecified anxiety.   I do not see how this can interfere with his ability to engage in some kind of work activity" (Tr. 346).   Having specifically referred to Dr. Saleh's notes, it is clear  the ALJ considered Plaintiff's alleged anxiety disorder  when determining Plaintiff's residual functional capacity.   The ALJ implicitly found Plaintiff's anxiety was not severe, base in part on the opinion of Dr. Saleh who explicitly stated he did not believe the anxiety would interfere with Plaintiff's ability to work.   *See id.*

In determining Plaintiff's RFC, the ALJ considered the reports and opinions from the Psychiatric Review Technique forms completed by James L. Meyers, Psy.D.[6] and Gary

---

[5] The Court notes Plaintiff does not raise an issue regarding Plaintiff's physical impairments in the RFC.   *See* Plaintiff's Brief.   Therefore, the Court's discussion is limited to medical evidence regarding Plaintiff's mental impairments.

[6] On 3/26/2008, Meyers reviewed Plaintiff's records and found that Plaintiff suffered from a mental impairment that was not severe (Tr. 278-297).   The disposition was based on the categories of affective disorders and personality disorders (Tr. 278).   Dr. Meyers assessed Plaintiff had mild limitations in the areas of restrictions of activities of daily living, difficulties

Buffone, Ph.D.,[7] who found Plaintiff's mental impairments were non-severe (*see* Tr. 17, 278-91, 320-33).   Implicitly, these opinions carried greater weight with the ALJ than the opinion of Lynda Walls, the non-treating consultative psychologist who saw Plaintiff in March 2008 (*see* Tr. 17, 301-06).   Moreover, although he discounted a portion of Dr. Walls' opinion, as discussed below, the ALJ noted that Dr. Walls' opinion is generally consistent with the ALJ's findings.[8] *Id.* The ALJ also considered the opinion of Alan J. Harris, Ph.D., a licensed psychologist who evaluated Plaintiff's mental abilities by administering several psychiatric tests, in addition to the in-person interview (Tr. 247-63).   Dr. Harris determined that Plaintiff was capable of working, despite Plaintiff's medical and criminal history[9] (Tr. 17, 234-241).   Review of the record reveals this medical opinion evidence is consistent with Plaintiff's residual functional capacity.

The effects of an impairment are measured by the limitations on the ability to work. See 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe). Regarding Plaintiff's mental limitations, the ALJ found Plaintiff's

_____

in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 288).

[7] On 8/15/2008, Buffone reviewed Plaintiff's records and found that Plaintiff suffered from a mental impairment that was not severe (Tr. 320-333). The disposition was based on the categories of affective disorders and personality disorders (Tr. 320).  Dr. Buffone reported mild limitations in the areas of restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 330).

[8] The ALJ noted that Dr. Walls reported Plaintiff's mental conditions greatly improved with treatment (Tr. 302).  This is consistent with the ALJ's findings (Tr. 16).

[9] The ALJ noted that Plaintiff reported to his treating psychiatrist that he had been to jail five (5) times and prison one (1) time (*see* Tr. 17).

remaining ability to work required Plaintiff be restricted to jobs that provided a low stress work environment with limited contact with the public (Tr. 15).

This residual functional capacity clearly takes into account all of Plaintiff's mental limitations.   Plaintiff's argument to the contrary is without merit.   SSR 96-8p provides guidelines in assessing a claimant's residual functional capacity.   In reviewing those guidelines, the Court finds no error in the ALJ's RFC assessment.   Moreover, the ALJ not only pointed to the medical evidence that supports his determination of Plaintiff's mental RFC, he also implicitly accounted for all of Plaintiff's moderate mental limitations in the domain of social functioning in the posed hypothetical.   Thus, Plaintiff's mental RFC assessment was determined in accord with the prevailing case law within our circuit.   *See Winschel*, 631 F.3d at 1180-81 (ALJ must specifically account for plaintiff's moderate limitations in concentration, persistence or pace, which may be found by reference to supporting medical evidence, or otherwise implicit or explicit statements in the hypothetical question asked of the vocational expert); *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (finding an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounted for moderate limitations in concentration, persistence or pace where the medical evidence demonstrated the claimant retained the ability to perform such tasks).[10]

In sum, the Court finds the residual functional capacity assessed by ALJ Droker is supported by substantial evidence.

**Use of Hypothetical Question**

Plaintiff challenges the ALJ's use of the hypothetical question posed to the VE.

---

[10]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

Relying on *Winschel*, Plaintiff argues the ALJ erred by not addressing Plaintiff's ability to concentrate or the ability to maintain attention and maintain a schedule, which are components of the concentration, persistence or pace functional domain.  Plaintiff's Brief at 4-5.  In this instance, the ALJ found Plaintiff had only mild limitations in concentration, persistence or pace (Tr. 15).  Defendant argues that *Winschel* is distinguishable from this case, and the hypothetical question asked of the vocational expert encompassed all of Plaintiff's impairments.  Defendant's Brief at 7-12.  Thus, Defendant posits that the VE's testimony constitutes substantial evidence in support of the ALJ's finding that Plaintiff could perform other work.  Defendant's Brief at 7.  Here, the Court agrees with Defendant.

Hypothetical questions are tools used by the ALJ to introduce independent evidence of the existence of jobs in the national economy that a claimant can perform.  *See Bouie v. Astrue,* 226 Fed. Appx. 892, 894 (11th Cir. 2007); *Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1228 (M.D. Fla. 2002) (the goal when using a vocational expert is to determine whether the claimant can perform other work in the economy).  Thus, hypothetical questions are not tools to assess a plaintiff's residual functional capacity, but tools to determine what jobs an individual with particular characteristics and limitations can perform. *See Bouie*, 226 Fed. Appx. at 894.

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical question posed to the VE must include all impairments of the particular plaintiff for the VE's testimony to constitute substantial evidence upon which the ALJ may rely in making the disability determination.  *Winschel*, 631 F.3d at 1180; *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985).  However, the ALJ is not required to include any limitations offered by plaintiff's

11

counsel or plaintiff's medical sources that were not supported by substantial evidence and/or were properly discounted. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *McSwain*, 814 F.2d at 617.   Further, "[a] 'hypothetical question[ ] adequately account[s] for a claimant's limitations . . . when the question[ ] otherwise implicitly account[s] for the [ ] limitations.'" *Kinnard v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 835, 837 (11th Cir. 2011) (quoting *Winschel*, 631 F.3d at 1180) (alteration in original). Moreover, when medical evidence demonstrates that the plaintiff retains the ability to perform work related tasks despite deficiencies, an ALJ's hypothetical stating more generic limitations, such as to simple and routine tasks, may adequately account for such limitations. *See Wilson v. Astrue*, No. 3:11-cv-153-J-TEM, 2012 WL 1060147, at *11 (M.D. Fla. Mar. 29, 2012).

At the June 10, 2010 administrative hearing, vocational expert Melissa Brooks testified (Tr. 48-53).  The VE was present throughout the entire hearing, heard Plaintiff's testimony and was sworn in prior to giving her testimony (Tr. 48).   The ALJ posed one hypothetical question to the VE (Tr. 49-50).  The ALJ first asked:

> Okay.  Assume I find that the Claimant is 39 years old, has a high school education.  Assume further, I find that he could only perform light work, and is further limited by the following exertional and non-exertional impairments.  He needs a sit-stand option.  He needs to avoid ladders or unprotected heights.  He needs to avoid the operation of heavy, moving machinery.  He needs a low stress work environment; limited contact with the public.  He can only occasionally bend or crouch, kneel, stoop, squat or crawl, and he needs to avoid the operation of foot controls.  Can he perform any of his past work?

(Tr. 50).  In response, the VE stated that such a person would not be able to do Plaintiff's past relevant work.  *Id.*  The ALJ then asked:

> But on an entry level, and assume the Claimant has no skills, assume no semi-skills at all, and that he's the age I've previously described, and has the work experience and education previously stated. Assume further that he could perform light work and has the exertional and non-exertional limitations I originally described. Are there any entry level jobs the Claimant could perform, and, if so, could you give us the title of the job, the number of jobs in the region, which I define as the state of Florida; and, if there's some non-included sedentary level jobs, if you would describe those as well.

*Id*. The VE testified that such a person would be able to perform the requirements of representative occupations such as agricultural produce sorter, office helper and addresser (Tr. 19, 50-52).

Plaintiff challenges the adequacy of the hypothetical question in addressing his mild difficulties in concentration, persistence or pace. Plaintiff's Brief at 4-8. In this case, the operative hypothetical question asked of the vocational expert encompassed all of Plaintiff's limitations as stated in the RFC. Contrary to Plaintiff's assertions, the opinion of Lynda Walls, Ph.D., a non-treating consultative psychologist, was adequately reflected within the ALJ's determination of Plaintiff's RFC. Plaintiff points to one line of Dr. Walls' opinion to assert that the posed hypothetical was inadequate. Plaintiff's Brief at 5. Dr. Walls stated Plaintiff "cannot regularly attend to a routine and maintain a schedule due to both physical difficulties and, apparently, to personality difficulties" (Tr. 305).

Plaintiff mistakenly relies on this single sentence within Dr. Walls' opinion as evidence that his limitations in concentration are higher than reflected in the hypothetical. Dr. Walls also stated, however, that Plaintiff "appears to be capable of maintaining attention and concentration for simple tasks" and Plaintiff "appears to be capable of making routine decisions." *Id*. The ALJ properly found Dr. Walls' opinion regarding Plaintiff's physical

13

difficulties because the opinion regarding physical ailments was beyond the scope of her role as a psychologist (Tr. 17).  The ALJ reasoned that Dr. Walls' consultative opinion in this regard could only be based on Plaintiff's subjective complaints; therefore, it was afforded little weight.  *Id.*

Taking the record as a whole, the ALJ found Plaintiff had mild difficulties in maintaining concentration, persistence or pace (Tr. 13).  Plaintiff does not challenge this finding.  Giving greater weight to the opinions of Plaintiff's treating psychiatrist, Dr. M. Saleh, the ALJ found Plaintiff's mental limitations restricted Plaintiff's mental ability to work as stated in the RFC (*see* Tr. 16-18).  As discussed in the previous section, each of Plaintiff's work-related mental restrictions is reflected in one or more pieces of medical evidence in the record.

To briefly recap, the operative hypothetical was more than sufficient to account for Plaintiff's mild limitation in concentration, persistence or pace.  A number of courts within this district have found the limitation to "low stress" jobs or the avoidance of "unusual stress" was sufficient restriction for a plaintiff who had only mild difficulties within the four functional areas or only a non-severe mental impairment.  *See, e.g., Baker v. Astrue*, No. 5:09-cv-480-FtM-SPC, 2011 WL 611663 (M.D. Fla. Feb. 11, 2011) (finding limitation to simple repetitive tasks in a low stress environment adequately accounted for the plaintiff's non-severe mental impairments that resulted in mild limitations in the broad areas of functioning set out in the regulations); *Johnson v. Astrue*, No. 3:09-cv-492-J-JRK, 2010 WL 3894098 (M.D. Fla. Sept. 30, 2010) (finding no error with the ALJ's determination that limited the plaintiff to "avoid unusual stress" in light of the plaintiff's non-severe mental impairment and mild difficulties in the four functional areas, but reversing the ALJ on other

14

grounds); *Stout v. Astrue*,  No. 3:07-cv-987-J-TEM,  2009 WL 890388 (M.D. Fla. Mar. 31, 2009) (finding the ALJ's hypothetical question for the individual to avoid work with unusual stress adequately addressed the plaintiff's severe affective disorder that caused only mild to moderate difficulties in concentration, persistence or pace).

Substantial medical evidence demonstrates Plaintiff retains the ability to perform work related tasks despite concentration deficiencies (*see, e.g.*, Tr. 290, 304-305, 332, 346).   Therefore, the ALJ's hypothetical question restricting the individual to "low stress work environment; limited contact with the public," and asking the VE to "assume the Claimant has no skills, assume no semi-skills at all" adequately accounted for Plaintiff's mild difficulties in concentration, persistence or pace.  *See, e.g., Jarrett*, 422 Fed. Appx. at 872; *see also Winschel*, 631 F.3d at 1180-81 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitation in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citations omitted).

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the ALJ that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.  The Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 27th  day of September, 2012.


_Thomas E. Morris_
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record